UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)
CASE NO.:

STUART SHAW,

     Plaintiff,

v.

CRISTINA SOLANA,

     Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF
CYBERPIRACY PROTECTIONS PURSUANT TO 15 U.S.C. §8131,
CYBERSQUATTING PURSUANT TO 15 U.S.C. § 1125(d), RIGHT OF PUBLICITY
PURSUANT TO FLORIDA STATUTES § 540.08, COMMON LAW UNFAIR
COMPETITION, AND RELIEF IN EQUITY**

     **COMES NOW**, the Plaintiff, STUART SHAW ("Plaintiff"), by and through the undersigned counsel, and files this Complaint, and in support thereof states as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for preliminary and permanent injunctive relief and for damages against Defendant, CRISTINA SOLANA ("Defendant") arising from violations of Cyberpiracy Protection for Individuals pursuant to 15 U.S.C. § 8131, Cybersquatting pursuant to 15 U.S.C. §1125(d), Right of Publicity pursuant to Florida Statutes § 540.08, Common Law Unfair Competition, and Relief in Equity.

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1338(a), 1338(b), and 15 U.S.C. §1121. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). This action alleges claims which are federal claims or federal questions.

3.  At all times material hereto, Plaintiff, STUART SHAW ("Plaintiff"), was a citizen of the State of Florida and was residing in Miami, Florida and is otherwise *sui juris*. Plaintiff is a personal chef and current business owner of a personal chef business known as "TheMiamiPersonalChef.com" and owns a domain name "themiamipersonalchef.com".

4.  At all times material hereto, Defendant was residing in Miami, Florida and was operating her web hosting and marketing business in Miami, Florida and is otherwise *sui juris*.

5.  This Court has general personal jurisdiction over Defendant, as Defendant conducts business in this judicial district, Defendant's conduct directly effects Plaintiff who resides in this judicial district, and the business and marketing services to be performed by Defendant for Plaintiff and the fiduciary duties owed by Defendant to Plaintiff were to be honored and carried out in Miami, Florida.

6.  Venue is proper in this judicial district under 28 U.S.C. §1391(a), in that Defendant is subject to personal jurisdiction in this judicial district and under 28 U.S.C. §1391(b) and (c) because a substantial part of the events giving rise to Plaintiff's claims herein occurred and continue to exist in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

7.  During the summer of 2007, Plaintiff contracted with Defendant, who was operating a website marketing business named "Need Marketing Group" to develop and create a website for Plaintiff for Plaintiff's personal chef business known as "MiamiPersonalChefs.com". The domain name which Plaintiff purchased for the website was "miamipersonalchefs.com". A 2007 copyright of "Chef Stuart Shaw" appears in the footer maintained by NeedWebDesign.com.

8.  After Plaintiff experienced considerable problems with the website created by Defendant which included communication problems, Plaintiff retained legal counsel, Kathy L. Houston, Esq. to assist Plaintiff in terminating the website hosting services which were provided by Defendant through "Need Marketing Group". Ms. Houston sent correspondence to Defendant on February 23, 2010 regarding the termination of the business relationship. *The February 23, 2010 correspondence to Defendant is attached hereto as "Exhibit A."* The correspondence explicitly demands that any contact regarding the matter is to be carried out through Ms. Houston's law firm, but despite this demand, Defendant circumvented Ms. Houston's firm and continued to communicate directly with Plaintiff. Plaintiff received a phone call from Defendant and Defendant's Husband subsequent to Ms. Houston's letter to Defendant. During the phone call, Plaintiff requested that Defendant release his domain name. Defendant refused and responded by stating "Fuck off, we are going to ruin your business." Plaintiff was intimidated by Defendant and her husband and terminated the phone call by reminding Defendant that she was not to contact him directly regarding the matter, and that Defendant was to communicate with Ms. Houston. On March 1, 2010, Need Marketing Group responded to the February 23, 2010 correspondence. *Need Marketing Group's response is attached hereto as "Exhibit B."* Need Marketing Group's response is signed by "Need Marketing Group" and not by any one individual.

9.  At all times material hereto, upon information and belief, Defendant solely owned and directly managed her business of "Need Marketing Group" and employed one employee. The second paragraph of Defendant's response letter advised Plaintiff that, "We would like to clarify that Mr. Shaw was dealing with a business not an individual and all correspondence should be directed to Need Marketing Group, not Cris Solana" was a tactic to thwart Plaintiff

from obtaining rightful control over the domain name, and to further damage Plaintiff and Plaintiff's business.

10. Following the business separation and to the present day, Defendant has refused to provide Plaintiff the ability to transfer his domain to a new hosting company and to this day, Defendant continues to hold the domain hostage so as to intentionally deprive Plaintiff of the use of the domain name and domain. In addition, Defendant has used the domain to post data and information to intentionally harm Plaintiff and Plaintiff's business which Defendant had a duty to serve and benefit. *Documentation from "www.whois.com" demonstrating that Defendant presently continues to hold control of Plaintiff's domain <miamipersonalchefs.com> over Plaintiff's objections is attached hereto as "Exhibit C".*

11. In March of 2010, following the business separation, Defendant posted new content on <miamipersonalchefs.com>. The new content posted by Defendant listed Plaintiff's competitors and naming the website "Top 6 Miami Personal Chefs". Defendant also removed any mention of Plaintiff and his personal chef business. At the time of the filing this action, <miamipersonalchefs.com> is/was registered, held and maintained by Defendant. Defendant has acted and continues to act in bad faith by enjoining Plaintiff from having control over a domain name which Plaintiff paid for and Defendant is acting in bad faith by interfering with Plaintiff's business and intentionally harming Plaintiff and Plaintiff's business by posting a list of Plaintiff's competitors on <miamipersonalchefs.com> and preventing Plaintiff from using Plaintiff's own domain name. Defendant recently removed the posting of the information regarding Plaintiff's competitors after five years of creating and maintaining the posts.

12. Immediately prior to the business separation, Defendant refused to provide Plaintiff the

ability to transfer his domain to a new hosting company, Plaintiff was forced to reestablish his internet presence and registered a different domain name <themiamipersonalchef.com> to protect the destruction of his website. Plaintiff has experienced serious difficulties developing business with the new domain name and Defendant and Defendant's bad faith conduct is the cause of Plaintiff's difficulties.

13. Plaintiff's new website, <themiamipersonalchef.com> experiences a large volume of repeat traffic directed to Plaintiff's new website and the traffic originates from blacklisted or false IP addresses. Upon investigation by "NetEvidence", a certified forensic investigation firm, it was discovered that <themimiapersonalchef.com> has been sabotaged by Defendant by causing traffic-generating systems to send excessive and crippling automated traffic to Plaintiff's website. Upon information and belief Defendant is the cause of this excess automated traffic. The traffic is an attack by Defendant and detracts from the effectiveness of Plaintiff's website and causes Plaintiff to incur charges for the traffic.

14. In order to drive more traffic and business to <themiamipersonalchef.com>, Plaintiff attempted to enlist and utilize "Google AdWords" by contracting with Google and has incurred and paid extensive fees to Google. Upon investigation by NetEvidence, it was discovered that in addition to direct "url" traffic, Plaintiff's website also receives false Google traffic as a result of the performance of searches which are driving Plaintiff's website down the "results list". Defendant is the cause of this false traffic.

15. On or about December 22, 2014, Plaintiff's Google AdWords account was breached. Upon information and belief, Defendant breached the account and accessed Plaintiff's Google AdWords account and initiated a false campaign for Plaintiff and assigned a daily budget of $9,999.00. In addition, Plaintiff asserts that Defendant initiated a "robo-call" system which

has been causing excessive traffic causing between 2,800 clicks per 24 hours or 20 clicks per minute on Plaintiff's website daily, which meant that Plaintiff's budget of $9,999.00 was reached or exceeded, causing Plaintiff to be financially responsible to pay the false fees. *Documentation from Host Gator detailing the number of hits on <the miamipersonalchef.com> is attached hereto as "Exhibit D."* Google and Plaintiff investigated and discovered the discrepancy on December 26, 2014 and determined that the IP address associated with the new campaign was not Plaintiff's IP address and Google concluded that the new campaign was a false campaign. As a result of Google's determination, all of Plaintiff's existing campaigns were suspended which further damaged Plaintiff and Plaintiff's business. As a result of the campaign suspensions, Plaintiff's website was not available or visible to the public during the busy December holiday season and as a result Plaintiff lost significant business from potential customers. The Fraud department of Google instructed Plaintiff to change all of his passwords and informed Plaintiff that under the "tools" tab of Plaintiff's campaigns, he could view the general geographic area of the IP address which initiated the fraudulent campaign.

16. Plaintiff followed the instructions of Google's fraud department and determined that the fraudulent campaign was initiated in a community in the south area of Miami-Dade known as "The Hammocks". Upon information and belief, Defendant resides in The Hammocks at all times material hereto and the fraudulent campaign was initiated and continues be perpetuated from The Hammocks.

17. Defendant knowingly and intentionally continues to hold the registration of the <miamipersonalchefs.com> domain in bad faith and upon information and belief is continuing to do so to profit from Plaintiff's domain name and to intentionally harm Plaintiff.

6

18. Defendant has no belief or reasonable grounds to believe that the registration and continued use of <miamipersonalchefs.com> domain is fair use or otherwise lawful, especially for the reason that after the termination of the business relationship between Plaintiff and Defendant, Plaintiff expressly requested that Defendant transfer Plaintiff's domain to Plaintiff. Defendant has refused to transfer the domain to Plaintiff.

19. Defendant has held "hostage", the registered <miamipersonalchefs.com> domain, for five years and continues to do so, with the specific intent to harm Plaintiff knowing that Plaintiff was continuing to attempt to salvage his business by purchasing and using a new business domain name, <themiamipersonalchef.com> which is similar to Plaintiff's pirated domain and Defendant took additional intentional actions which are described herein to intentionally harm Plaintiff and Plaintiff's business.

20. Defendant knowingly and intentionally has continued to hold and control the registration of Plaintiff's <miamipersonalchefs.com> domain for years over Plaintiff's objection and, continues to use and to misappropriate Plaintiff's <miamipersonalchefs.com> domain with Defendant has held and controlled the domain without consent of Plaintiff, with specific intent to deprive Plaintiff of the right and opportunity to use the domain, and to benefit from the ownership of Plaintiff's domain. Defendant's wrongful actions were committed and continue in bad faith with specific intent to injure Plaintiff and to profit and/or benefit from the unauthorized registration and use of Plaintiff's domain.

## COUNT I- CYBERPIRACY PROTECTION FOR INDIVIDUALS (15 U.S.C. § 8131)

21. Plaintiff realleges and incorporates paragraphs 1 through 20 herein as if fully set forth herein.

22. Defendant's herein described actions constitute violations of the Cyberpiracy Protection for Individuals, under the Anti-Cybersquatting Consumer Protection Act ("ACPA") pursuant to

15 U.S.C. §8131.

23. Defendant's wrongful actions and violations of the ACPA are willful, intentional, and have been committed with malice the intent to cause irreparable harm to Plaintiff.

24. As a direct and proximate result of Defendant's wrongful actions, Plaintiff has suffered and will continue to suffer deprivation of the right and opportunity to use Plaintiff's <miamipersonalchefs.com> domain. Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction compelling Defendant, and all persons acting in concert with Defendant, to transfer <miamipersonalchefs.com> domain to Plaintiff pursuant to 15 U.S.C. §8131(2) without delay to as to prevent further irreparable damage to Plaintiff.

25. Plaintiff is further entitled to recover from Defendant legal costs and attorneys' fees pursuant to 15 U.S.C. §8131(2).


### COUNT II- CYBERPIRACY PREVENTION (15 U.S.C. §1125(d))

26. Plaintiff realleges and incorporates paragraphs 1 through 20 herein as if fully set forth.

27. Defendant's wrongful actions constitute violations of Cyberpiracy Prevention pursuant to 15 U.S.C. §1125(d).

28. Defendant's wrongful actions are willful, intentional, and have been committed with malice and are calculated to cause irreparable injury and damage to Plaintiff.

29. As a direct and proximate result of Defendant's wrongful actions, Plaintiff has suffered and will continue to suffer deprivation of the right and opportunity to use Plaintiff's <miamipersonalchef.com> domain. Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction pursuant to 15 U.S.C. §1116 compelling Defendant, and all persons acting in concert with Defendant, to transfer the domain to Plaintiff. Defendant's

misappropriation and abuse of Plaintiff's domain has caused and is causing irreparable harm to Plaintiff.

30. Plaintiff is further entitled to recover from Defendant any of Defendant's profits obtained from the domain, any damages sustained by Plaintiff as a result of Defendant's wrongful acts, and costs of this action pursuant to 15 U.S.C.§1117(a) including reasonable attorneys' fees. Plaintiff is presently unable to ascertain the full extent of the monetary damages or lost profits it has suffered by reason of Defendant's wrongful acts.

31. Plaintiff is further entitled to recover statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just, instead of actual damages and profits, pursuant to 15 U.S.C.§1117(d).

## COUNT III- RIGHT OF PUBLICITY UNDER FLORIDA STATUTES § 540.08

32. Plaintiff realleges and incorporates paragraphs 1 through 19 fully set forth herein.

33. Defendant knowingly and intentionally continues to hold the registration of Plaintiff's <miamipersonalchefs.com> domain, continues to use and continues to misappropriate <miamipersonalchefs.com> domain with oppression and malice by holding the registration of the domain, without consent from Plaintiff, with specific intent to deprive Plaintiff of the right and opportunity to use the domain and to benefit from the ownership of the domain. Defendant's wrongful actions were committed in bad faith with specific intent to injure and damage Plaintiff and/or to profit and benefit from the unauthorized registration of the domain.

34. Defendant's unauthorized of Plaintiff's domain and Defendant's calculated efforts to harm Plaintiff constitutes an invasion of Plaintiff's right to publicity, pursuant to Florida Statutes, § 540.08, in that Defendant is using the domain name "miamipersonalchefs.com" which is

owned by Plaintiff, to post articles and information promoting Plaintiff's competitors diverting business and customers and revenue away from Plaintiff and towards Plaintiff's competitors, for Defendant's own financial gain.

35. By reason of the acts of Defendant herein alleged, Plaintiff has suffered and, unless Defendant is restrained from continuing her wrongful acts, Plaintiff will continue to suffer irreparable harm for which he has no adequate remedy at law. Defendant's wrongful conduct is calculated to harm Plaintiff.

### COUNT IV- COMMON LAW UNFAIR COMPETITION

36. Plaintiff realleges and incorporates paragraphs 1 to 20 as if fully set forth herein.

37. Defendant's actions constitute a violation of Florida's unfair competition common law based on violations of 15 U.S.C. §1125(d) and 15 U.S.C. §8131.

38. Defendant's wrongful actions are willful, intentional, and have been committed with oppression and malice towards Plaintiff and are calculated to intentionally harm Plaintiff and Plaintiff's reputation and business of personal chef.

39. As a direct and proximate result of Defendant's wrongful actions, Plaintiff has suffered and will continue to suffer deprivation of the right and opportunity to use Plaintiff's domain. Plaintiff has also suffered injury to peace, happiness, and feelings, as well as injury to goodwill, professional standing, reputation, and future publicity value. Plaintiff has no adequate remedy at law.

40. Plaintiff is entitled to an injunction compelling Defendant, and all persons acting in concert with her, to transfer Plaintiff's <miamipersonalchefs.com> domain to Plaintiff and to refrain from the conduct of promoting Plaintiff's competitors, defaming Plaintiff and diverting business, customers and revenue away from Plaintiff and towards Plaintiff's competitors.

41. Plaintiff is further entitled to recover from Defendant restitution damages suffered by Plaintiff as a result of Defendant's unauthorized use of Plaintiff's domain and Defendant's calculated actions and efforts to harm Plaintiff Plaintiff is further entitled to punitive damages, as well as reasonable attorneys' fees and costs. Plaintiff is presently unable to ascertain the full extent of the monetary damages or lost profits it has suffered by reason of Defendant's wrongful acts and Defendant's intentional efforts to harm Plaintiff and Plaintiff's business, reputation and ability to earn.

### COUNT V- RELIEF IN EQUITY

42. Plaintiff realleges and incorporates paragraphs 1 to 20 above, as if fully set forth herein.

43. Defendant's wrongful actions warrant affirmative injunctive relief based on the principals of equity. Defendant knowingly, intentionally, and willfully continues to hold the registration of Plaintiff's <miamipersonalchefs.com> domain consisting of Plaintiff's "miamipersonalchefs.com" name in bad faith with oppression and malice with the intent to harm Plaintiff. Defendant has no legitimate reason for continuing to hold the registration of the subject domain and continues to hold the registration of the accused domain for the sole purpose of benefitting from ownership and potential sale of the subject domain and to inequitably deprive Plaintiff from the rightful use thereof and to refrain from the conduct of promoting Plaintiff's competitors, defaming Plaintiff and diverting business, customers and revenue away from Plaintiff and towards Plaintiff's competitors.

44. As a direct and proximate result of Defendant's wrongful actions, Plaintiff has suffered and will continue to suffer deprivation of the right and opportunity to use the accused domain. Plaintiff has also suffered injury to peace, happiness, and feelings, as well as injury to goodwill, professional standing, and future publicity value. Plaintiff has no adequate remedy

at law. Plaintiff is entitled to an equitable injunction compelling Defendant, and all persons acting in concert with Defendant, to transfer the accused domain to Plaintiff and to refrain from the conduct of promoting Plaintiff's competitors, defaming Plaintiff and diverting business, customers and revenue away from Plaintiff and towards Plaintiff's competitors.

**WHEREFORE**, Plaintiff, STUART SHAW, respectfully requests that this Court enter a judgment for immediate, emergency, temporary and permanent injunctive relief and for damages as follows:

a)  Finding that Defendant has violated laws against Cyberpiracy and Cybersquatting pursuant to 15 U.S.C. §1125(d) and 15 U.S.C. §8131, Plaintiff's Right to Publicity, pursuant to Florida Statutes, § 540.08, Common Law Unfair Competition and equitable considerations;

b)  Ordering that Defendant and its officers, agents, servants, employees and attorneys and all persons in active concert or participation with any of the foregoing, be  immediately enjoined and restrained, from:

a. Using the "miamipersonalchefs.com" name or any word, words, symbol, symbols, phrase or term identical or confusingly similar thereto alone or prominently displayed in promotional material, advertisements, web pages, signs, or in any other way in connection with the advertising, distribution, offering for sale of products and services not emanating from or authorized by Plaintiff;

b. Displaying as part of any domain name, in labels, promotional material, advertisements, signs, or in any other way the "miamipersonalchefs.com" name or any word, words, symbol, symbols, phrase or term identical or confusingly similar thereto in connection with the sale of products or services;

    c.   Cybersquatting the "miamipersonalchefs.com" name;

    d.   Infringing upon the "miamipersonalchefs.com" name;

    e.   Unfairly competing with Plaintiff in any manner whatsoever; and

    f.   Taking actions to harm Plaintiff and Plaintiff's business including the publishing of information to promote Plaintiff's competitions or to divert business, customers and revenues away from Plaintiff and towards Plaintiff's competitors.

c)   Ordering that Defendant be directed under 15 U.S.C. §1116 to file with the Court and serve upon Plaintiff within thirty (30) days after the issuance of any injunction a report in writing and under oath setting forth in detail the manner and form in which Defendants has complied with the injunction;

d)   Ordering that Defendant pays compensatory damages and statutory damages under 15 U.S.C. §1117(d), on election by Plaintiff, in an amount of up to $100,000.00 per domain name;

e)   Ordering that Defendant immediately transfer the control and use of "<miamipersonalchefs.com>" to Plaintiff.

f)    Ordering that Defendant account to Plaintiff for, and disgorge, all profits Defendant has derived by reason of the wrongful acts described above;

g)   Determining and ordering that Defendant pay actual damages to Plaintiff;

h)   Determining and ordering that Defendant pay punitive damages to Plaintiff;

i)   Determining and ordering that Defendant pay Plaintiff reasonable attorneys' fees, prejudgment interest, and costs of this action under 15 U.S.C. §1117, and 15 U.S.C. §8131(2), and other and further legal and equitable relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims triable by jury.


Respectfully submitted on this **3rd day of March, 2015** by:


LAW OFFICES OF WILLIAM BRADY, P.A.
800 Brickell Avenue
Penthouse Two
Miami, FL 33131
Phone:     (305) 358-7688
Facsimile: (305) 358-4010
Email: wbrady@wbradylaw.com


___/s/ William Brady, Jr._____
WILLIAM BRADY, JR. ESQ.
Fla. Bar No.: 0054550